Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LARISA BUGANTEV,<br><br>                Plaintiff,<br><br>    vs.<br><br>DESKTOP METAL, INC., RIC FULOP,<br>BILAL ZUBERI, DAYNA GRAYSON,<br>JAMES EISENSTEIN, JEFF IMMELT,<br>SCOTT DUSSAULT, STEPHEN NIGRO,<br>STEVE PAPA, and WEN HSIEH,<br><br>                Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities<br>      Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities<br>      Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Larisa Bugantev ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

## <u>SUMMARY OF THE ACTION</u>

1.      Plaintiff brings this stockholder action against Desktop Metal, Inc. ("Desktop Metal" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Nano Dimension Ltd. ("Parent") through merger

vehicle Nona US I, Inc. ("Merger Sub," together with Parent "Nano"), as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a July 3, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the Definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the deal, Desktop Metal stockholders will receive $5.50 per share in cash, subject to possible downward adjustments to $4.07 per share.

3.      Thereafter, on August 1, 2024, the Company filed its Preliminary Proxy Statement (the "Proxy Statement") on Schedule 14A with the United States Securities and Exchange Commission (the "SEC").

4.      The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5.      The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Desktop Metal, provided by the Company to the Company's financial advisor,

Stifel, Nicolaus & Company Incorporated ("Stifel"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Stifel, and provided to the Board.

6.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.     Plaintiff is a resident of Ontario, Canada and, at all times relevant hereto, has been a Desktop Metal stockholder.

8.     Defendant Desktop Metal manufactures and sells additive manufacturing technologies for engineers, designers, and manufacturers in the Americas, Europe, the Middle East, Africa, and the Asia-Pacific. Desktop Metal is incorporated under the laws of the State of Delaware and has its principal place of business at 63 3rd Avenue, Burlington, MA 01803. Shares of Desktop Metal common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "DM."

9.     Defendant Ric Fulop ("Fulop") has been the Chair of the Board of Directors of the Company at all relevant times. In addition, Defendant Fulop is the Company's founder and serves as its Chief Executive Officer ("CEO").

10.     Defendant Bilal Zuberi ("Zuberi") has been a director of the Company at all relevant times.

11.     Defendant Dayna Grayson ("Grayson") has been a director of the Company at all relevant times.

12.     Defendant James Eisenstein ("Eisenstein") has been a director of the Company at all relevant times.

13.     Defendant Jeff Immelt ("Immelt") has been a director of the Company at all relevant times.

14.     Defendant Scott Dussault ("Dussault") has been a director of the Company at all relevant times.

15.     Defendant Stephen Nigro ("Nigro") has been a director of the Company at all relevant times.

16.     Defendant Steve Papa ("Papa") has been a director of the Company at all relevant times.

17.     Defendant Wen Hsieh ("Hsieh") has been a director of the Company at all relevant times.

18.     Defendants identified in ¶¶ 9-17 are collectively referred to as the "Individual Defendants."

19.     Non-Party Nano Dimension Ltd., together with its subsidiaries, engages in additive manufacturing solutions in Israel and internationally.

20.     Non-Party Merger Sub is a subsidiary of Nano created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NYSE which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

24.     Defendant Desktop Metal manufactures and sells additive manufacturing technologies for engineers, designers, and manufacturers in the Americas, Europe, the Middle East, Africa, and the Asia-Pacific.

### *The Flawed Sales Process*

25.     As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed to effectuate a sale of the Company to Nano.

26.     Information regarding the Company Board's determination that Desktop Metal's standalone prospects were a better alternative to any of Nano's prior eight (8) offers to buy Desktop Metal considering the deal price ultimately agreed upon was significantly lower than all of Nano's previous offers.

27.     In addition, the Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Nano and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

28.     The Proxy Statement fails to disclose the totality of communications regarding post-transaction employment during the negotiation of the underlying transaction.

29.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

30.     On July 3, 2024, Desktop Metal and Nano issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> WALTHAM, Mass. & Boston--(BUSINESS WIRE)-- Nano Dimension Ltd. (Nasdaq: NNDM) ("Nano Dimension" or "Nano") and Desktop Metal, Inc. (NYSE: DM) ("Desktop Metal") today jointly announced that they have entered into a definitive agreement under which Nano Dimension will acquire all outstanding shares of Desktop Metal in an all-cash transaction for $5.50 per share, subject to possible downward adjustments to $4.07 per share, as described below.
>
> At $5.50 per share, the transaction represents a 27.3% premium to Desktop Metal's closing price and a 20.5% premium to the 30-day VWAP as of July 2, 2024, for total consideration of approximately $183 million, possibly down to $4.07 per share or $135 million in total.
>
> Yoav Stern, Nano Dimension's Chief Executive Officer and member of the Board of Directors, said, "Our combination with Desktop Metal is another step in Nano Dimension's evolution to become the leader in digital manufacturing, with capabilities in mass manufacturing for critical industrial applications. We're excited to join forces with an excellent group of technology leaders, all of whom share our vision for transforming manufacturing to Digital Industry 4.0. I look forward to working with Ric Fulop and his team to drive value for all our stakeholders, including creating opportunities for our employees as part of a larger, more diversified global innovative company, driving customer support and generating long-term value creation for shareholders as we focus on profitable growth."

Ric Fulop, Desktop Metal's Co-Founder and Chief Executive Officer, said, "We're excited to bring together our pioneering, complementary product portfolios that will further enhance our ability to serve our customers in high-growth industries with a more complete offering of digital manufacturing technologies for metal, electronics, casting, polymer, micro-polymer and ceramics applications. We look forward to working with Nano Dimension to join two great companies and their devoted teams that can serve our stakeholders to the maximum extent possible."

**Compelling Strategic and Financial Benefits**

- **Unites two product portfolios with highly complementary capabilities**: The transaction combines the strengths of each company across varied end user-applications, Additive Manufacturing ("AM") technologies and material coverage to create the broadest product portfolio across metal, electronics, casting, polymer, micro-polymer and ceramics. Nano is a known leader in 3D-printed electronics and high-performance polymer, ceramic and metal applications, with a robust software platform driven by DeepCube's deep learning-based AI, while Desktop Metal maintains platforms focused on industrial-volume scale applications of metal and polymer with proprietary materials, software, and sintering solutions.

- **Accelerates industry transition to mass production**: The union of the two companies will create a long-term business and a leader in 3D print through innovative solutions that drive the transition from prototyping to mainstream tooling and end-use part production. The combined company will be the first AM provider covering the full gamut of customer needs from prototyping to production across a range of critical and high-performance medical and electronics applications in industrial and high-performance materials.

- **Deepens exposure in key end markets, enhancing customer penetration, while diversifying its base**: The combined company is expected to be able to expand opportunities to cross-sell to its existing customers as well as to grow its overall customer base with optimized customer acquisition capabilities and joint go-to-market strategies, including targeting customers with complementary offerings in shared key markets in the automotive, aerospace/defense, industrial, medical and R&D/academia industries. Together, the combined company will serve a range of industry verticals with blue-chip customers including Amazon, Caterpillar, Fraunhofer Institute, NASA, Raytheon, REHAU, Tesla, Thermo Fisher Scientific, Toyota, the US Army and more.

- **Developing a premium, high-margin portfolio of AM & materials solutions with strong recurring revenue potential**: Together, Nano Dimension's and Desktop Metal's portfolio will be focused on high-tech solutions that generate premium margins and are supported by an installed machine base of over 8,000 systems, representing significant opportunities for recurring revenue generation from a larger services and consumables offering. The combined company will benefit from significantly enhanced scale and a diversified profile with **2023 combined revenue of $246 million**, of which **28% was generated by recurring revenue streams** from the services and consumables. The combined company's complementary expertise and leadership in solutions for mass production will create an AM company that has a record of delivering solutions for manufacturing at high volumes.

- **Together, the combined company will have a strong financial profile and cash reserves, to support a path to profitability and strategic initiatives**: The combination will enable pooling of resources in administration, sales, marketing and R&D and generate efficiencies and cost savings opportunities, while enhancing R&D and innovation capabilities. The combination is anticipated to generate in excess of $30 million in run-rate synergies over the next few years, in addition to previously announced cost savings from each of the two organizations. We believe business operations and capabilities will provide for consolidation opportunities as the combined company focuses on core geographies, including offices, R&D and manufacturing facilities in the multiple U.S. locations, UK, Germany, Switzerland, Netherlands, Italy, Israel and APAC.

**Transaction Highlights**

Subject to the terms and conditions of the merger agreement, Nano Dimension will acquire all of the outstanding shares of Desktop Metal for $5.50 per share in cash. The purchase price may be adjusted for:

- Transaction expenses: Desktop Metal estimates that transaction expenses will be approximately $11 million, which would result in an approximate decrease of $0.44 per share. The maximum reduction, based on expenses, is $0.63 per share.

- If the closing of the transaction extends into 2025, Nano Dimension has committed to providing Desktop Metal with a $20 million secured loan facility. Desktop Metal does not expect to draw on the facility, but to the extent it does, there will be an adjustment to the purchase price based on the amount drawn prior to closing of up to $0.80 per share.

- If all reductions will occur, the price will be $4.07 per share, a total consideration of $135 million.

The closing of the transaction is subject to certain closing conditions, including the approval of Desktop Metal's stockholders, and required regulatory approvals, and certain termination rights as described in the merger agreement.

Additional information about the proposed transaction, including a copy of the merger agreement, will be provided in a Report of Foreign Private Issuer on Form 6-K to be filed by Nano Dimension and a Current Report on Form 8-K to be filed by Desktop Metal with the U.S. Securities and Exchange Commission (the "SEC") and available at www.sec.gov.

**Timing and Approvals**

The transaction, which was unanimously approved by the Boards of Directors of both companies, is expected to close in the fourth quarter of 2024, subject to the satisfaction of customary closing conditions described above.

**Financing**

The transaction is not subject to a financing condition. Nano Dimension intends to finance the transaction using its cash on hand. The combined company is expected

to have a strong cash position at closing, with approximately $665 million at the $5.50 per share price ,or $680 million at the reduced price $4.07 per share price as described above, of projected cash and cash equivalents post-transaction, which assumes no repurchases of Desktop Metal's $115 million outstanding convertible notes which will be required as a result of the transaction if holders accept the offer to repurchase, unless refinanced.

### Potential Conflicts of Interest

31.     The breakdown of the benefits of the deal indicates that Desktop Metal insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Desktop Metal.

32.     In addition, Company insiders currently own large illiquid blocks of company shares, all of which will be converted into the Merger Consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| | Shares Beneficially Owned | |
| --- | --- | --- |
| Name of Beneficial Owner | Number of Shares of Class A Common Stock Beneficially Owned | Percentage Ownership of Outstanding Class A Common Stock |
| **5% or Greater Stockholders** | | |
| KPCB Holdings, Inc., as nominee(1) | 1,763,165 | 5.3% |
| Entities affiliated with The Vanguard Group(2) | 1,725,797 | 5.2% |
| Farhad Fred Ebrahimi and Mary Wilkie Ebrahimi(3) | 5,767,906 | 17.4% |
| **Named Executive Officers and Directors** | | |
| Ric Fulop(4) | 2,232,220 | 6.7% |
| Jason Cole(5) | 96,543 | * |

| | | |
|---|---|---|
| Jonah Myerberg(6) | 338,683 | 1.0% |
| Thomas Nogueira(7) | 57,280 | * |
| Scott Dussault(8) | 13,010 | * |
| James Eisenstein(9) | 19,810 | * |
| Dayna Grayson(10) | 20,162 | * |
| Wen Hsieh(1)(11) | 1,777,133 | 5.3% |
| Jeff Immelt(12) | 57,021 | * |
| Stephen Nigro(13) | 28,151 | * |
| Steve Papa(14) | 20,073 | * |
| Bilal Zuberi(15) | 13,967 | * |
| All executive officers and directors as a group (12 persons)(16) | 4,674,053 | 14.1% |

33.     In addition, employment agreements with certain Desktop Metal executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff. The golden parachute compensation is as follows:

| Name | Cash ($)(1) | Equity ($)(2) | Benefits ($)(3) | Total ($) |
|---|---|---|---|---|
| Ric Fulop | 1,160,000 | — | 6,197 | 1,166,197 |
| Jason Cole | 1,100,000 | 1,470,799 | 4,478 | 2,575,277 |
| Jonah Myerberg | 700,000 | 1,831,968 | 6,197 | 2,538,165 |
| Thomas Nogueira | 640,000 | 642,219 | 6,197 | 1,288,416 |

34.     The Proxy Statement also fails to disclose the totality of communications regarding post-transaction employment during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

35.     This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

36.     Thus, while the Proposed Transaction is not in the best interests of Desktop Metal, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Proxy Statement***

37.     The Desktop Metal Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

38.     The Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Proxy Statement fails to disclose:

a. Information regarding the Company Board's determination that Desktop Metal's standalone prospects were a better alternative to any of Nano's prior eight (8) offers to buy Desktop Metal considering the deal price ultimately agreed upon was significantly lower than all of Nano's previous offers;

b. Whether the confidentiality agreements entered into by the Company with Nano differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

c. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Nano, would fall away; and

d. The totality of communications regarding post-transaction employment during the negotiation of the underlying transaction.

39. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Desktop Metal's Financial Projections*

40. The Proxy Statement fails to provide material information concerning financial projections for Desktop Metal provided by Desktop Metal management to the Board and Stifel,

and relied upon by Stifel in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

41.    Notably the Proxy Statement reveals that as part of its analyses, Stifel reviewed, "non-publicly available information concerning Desktop Metal, including internal financial analyses and forecasts prepared by and provided to Stifel by Desktop Metal's management (collectively, the "Company Projections") and utilized per instruction of Desktop Metal."

42.    Therefore, the Proxy Statement should have, but fails to provide, certain information in the projections that Desktop Metal management provided to the Board, and Stifel. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

43.    With regard to the *Unaudited Financial Forecasts* provided by Desktop Metal Management, the Proxy Statement fails to disclose material line items for the following metrics:

   a.   Total Revenue, including all underlying inputs, metrics, and assumptions used to calculate same;

   b.   GAAP Cost of Sales, including all underlying inputs, metrics, and assumptions used to calculate same;

   c.   GAAP Gross Profit, including all underlying inputs, metrics, and assumptions used to calculate same;

   d.   GAAP Margin, including all underlying inputs, metrics, and assumptions used to calculate same;

e.  GAAP Operating Expenses, including all underlying inputs, metrics, and assumptions used to calculate same;

f.  GAAP Net Operating Income/ (Loss), including all underlying inputs, metrics, and assumptions used to calculate same;

g.  Net Income/ (Loss), including all underlying inputs, metrics, and assumptions used to calculate same;

h.  Non-GAAP Cost of Sales, including all underlying inputs, metrics, and assumptions used to calculate same;

i.  Non-GAAP Gross Profit, including all underlying inputs, metrics, and assumptions used to calculate same;

j.  Non-GAAP Margin, including all underlying inputs, metrics, and assumptions used to calculate same;

k.  Non-GAAP Operating Expenses, including all underlying inputs, metrics, and assumptions used to calculate same;

l.  Non-GAAP Net Operating Income/ (Loss), including all underlying inputs, metrics, and assumptions used to calculate same; and

m.  Non-GAAP Adjusted EBITDA, including all underlying inputs, metrics, and assumptions used to calculate same.

44.  This information is necessary to provide Plaintiff in her capacity as a Company stockholder with a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

45.     Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Stifel financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

_Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Stifel_

46.     In the Proxy Statement, Stifel describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinion.

47.     With respect to the _Selected Public Companies Analysis_, the Proxy Statement fails to disclose:

a.   The specific data analyzed for each of the selected publicly traded companies;

b.   The inputs, metrics, and assumptions used to determine the EV/ LTM (6/30/24) Revenue 1st Quartile, Median, Mean, and 3rd Quartile multiples utilized;

c.   The inputs, metrics, and assumptions used to determine the EV/ CY 2024E Revenue 1st Quartile, Median, Mean, and 3rd Quartile multiples utilized; and

d.   The inputs, metrics, and assumptions used to determine the EV/ CY 2025E Revenue 1st Quartile, Median, Mean, and 3rd Quartile multiples utilized.

48.     With respect to the _Selected Transactions Analysis_, the Proxy Statement fails to disclose:

a.   The date of which each selected transaction was consummated;

   b.  The aggregate value of each selected transaction;

   c.  The EV/ LTM Revenue 1st Quartile, Median, Mean, and 3rd Quartile multiples
       utilized; and

   d.  The EV/ NTM Revenue 1st Quartile, Median, Mean, and 3rd Quartile multiples
       utilized.

49.    Regarding the *Discounted Cash Flow Analysis*, disclose:

   a.  The inputs, metrics, and assumptions used to determine the terminal value
       multiples of 1.0x to 2.0x utilized;

   b.  The inputs, metrics, and assumptions used to determine discount rate range of
       13.0% to 17.00% utilized; and

   c.  The Company's weighted average cost of capital utilized.

50.    These disclosures are critical for Plaintiff to be able to make an informed decision
on whether to vote in favor of the Proposed Transaction.

51.    Without the omitted information identified above, Plaintiff is missing critical
information necessary to evaluate whether the Proposed Transaction truly maximizes her value
and serves her interest as a stockholder. Moreover, without the key financial information and
related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's
determination that the Proposed Transaction is in her best interests as a public Desktop Metal
stockholder. As such, the Board has violated the Exchange Act by failing to include such
information in the Proxy Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

52.     Plaintiff repeats all previous allegations as if set forth in full herein.

53.     Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

54.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

55.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

56.    The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

57.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

58.    The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

59.    The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote her shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

60.    Plaintiff repeats all previous allegations as if set forth in full herein.

61.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants

knew or should have known that the Proxy Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

62.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement; and nevertheless, approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

63.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Desktop Metal's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

64.     The Individual Defendants acted as controlling persons of Desktop Metal within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Desktop Metal to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Desktop Metal and

all of its employees.  As alleged above, Desktop Metal is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the Defendants, as follows:

A.    Enjoining the Proposed Transaction;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: August 12, 2024

**BRODSKY & SMITH**

By: *Evan J. Smith*

Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*